UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALEXANDER KREMENCHUTSKY;
CHANA LEVITSKY,

*Plaintiffs,*

– against –

CITIZENS BANK N.A.,

*Defendant.*

**MEMORANDUM & ORDER**
24-cv-01615 (NCM) (LKE)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Alexander Kremenchutsky and Chana Levitsky bring this action against defendant Citizens Bank, N.A. ("Citizens") for allegations concerning a bank loan provided by defendant. Specifically, plaintiffs allege defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Coronavirus Aid, Relief, and Economic Security Act ("CARES"), Pub. L. No. 116-136, § 1102, 134 Stat. 281 (2020), and committed common law fraud. *See generally* Amended Complaint ("AC"), ECF No. 15. Defendant moves to dismiss plaintiffs' amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defendant's Motion ("Mot."), ECF No. 19.[1] For the reasons stated below, defendant's motion to dismiss is GRANTED.

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss, ECF No. 19, as the "Motion"; plaintiffs' Memorandum of Law in

## BACKGROUND

Plaintiffs' Amended Complaint includes the following allegations. In June 2019, plaintiffs borrowed $880,000 from Citizens for a 360-month term loan at a 4.625% interest rate. AC 3.[2] In March 2020, plaintiffs participated in a government sponsored mortgage forbearance program. AC 3. Plaintiffs allege that they entered this program based on representations of defendant's agents. Specifically, the agents represented that they were licensed mortgage brokers and that there were no disadvantages to entering mortgage forbearance. AC 3.

At some point in 2020, plaintiffs sought to refinance their loan because their credit was in good standing and interest rates were low. AC 4. However, defendant informed plaintiffs that they could not refinance the loan because they were in forbearance. AC 4. Nevertheless, plaintiffs applied to refinance or modify their loan in 2020, but defendant delayed its response for over 24 months. Plaintiffs then resubmitted their application in 2022. AC 4. Defendant allegedly failed to send plaintiffs a notice that the loan refinance application was denied until it was too late for plaintiffs to appeal the denial. AC 4. Lastly, while the modification request was pending, defendant offered plaintiffs a plan to transition out of forbearance. AC 4. However, defendant refused to share the full terms of this proposal unless and until plaintiffs accepted the proposal. AC 4. Plaintiffs' modification application had already been denied at this time, but because plaintiffs were

---

Opposition to Defendant's Motion to Dismiss, ECF No. 20, as the "Opposition," and Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss, ECF No. 21, as the "Reply."

[2]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

not informed of the denial, they declined the proposal to exit forbearance. AC 4–5. Plaintiffs allege that defendant's actions constitute violations of TILA, RESPA, CARES, and also constitute fraud under New York law.

Prior to filing the instant action, plaintiffs filed an action against defendant in the Supreme Court of New York, Kings County on May 19, 2023. *See* Mot., Ex. A ("State Court Complaint"). The State Court Complaint contained the same factual allegations as are alleged in this federal action, and brought claims for detrimental reliance, predatory lending, unjust enrichment, negligence, fraud, and for alleged violation of the New York City unfair trade practices law. *See* State Court Complaint. Plaintiffs' State Court Complaint was dismissed on September 18, 2023 pursuant to CPLR 3211(a)(7) for failure to state a claim. *See* Mot., Ex. B, ECF No. 19-1. Plaintiffs filed this action after their state court case was dismissed.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[3] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of New York, Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims."

---

[3]     Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Truth in Lending Act

TILA was enacted to "protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms." *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016). Those terms include "things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA's disclosure requirements are triggered upon a "new credit transaction." *Ryder v. J.P. Morgan Chase Bank*, 767 F. App'x 29, 31 (2d Cir. 2019). Loan modifications generally cannot support a claim for a violation of TILA, unless the modification constitutes a "new transaction." *See* 12 C.F.R. § 226.20(a). Therefore, if refinancing of a previous transaction

4

results in a new financed amount exceeding the prior debt, TILA's disclosure obligations will be triggered. *Ryder*, 767 F. App'x at 31.

### A. *Plaintiffs' allegations do not plausibly allege a TILA claim.*

Defendant argues that plaintiffs' TILA claim fails because TILA's disclosure requirements do not apply to either forbearance or loan modification agreements that do not involve advancing new monies to a borrower. Mot. 6. Plaintiffs argue that TILA requirements apply because new money had the possibility of being advanced based on their modification application, and because plaintiffs sought "both options for modification and refinancing." Opp'n 3. Both parties rely on *Nath v. JP Morgan Chase Bank*, No. 15-cv-03937, 2016 WL 5791193 (S.D.N.Y. Sept. 30, 2016) to support their arguments. Plaintiffs' argument is unavailing.

In *Nath*, the court noted that TILA disclosure requirements do not apply to forbearance or loan modification agreements that "simply reduce the interest rate and payment schedule of a loan." *Id.* at *9 n.15. TILA's disclosure obligations are not triggered in those situations "except in narrow circumstances such as a refinancing in which the new amount financed exceeds the prior debt." *Ryder*, F. App'x at 31 (finding that because a loan modification agreement did not replace plaintiff's original obligation, and only modified some of its terms, it was not a refinancing and thus TILA did not apply).

Here, even accepting plaintiffs' argument that their loan modification application, if approved, would have met the narrow circumstances which could support a TILA claim, plaintiffs do not allege that they actually modified their loan. Thus, plaintiffs do not allege that they ever entered into a new credit transaction or that this modification resulted in refinancing of a new amount that exceeded their prior debt. Indeed, plaintiffs allege that

they were told that they could not modify or refinance their loan, but applied to do so nevertheless. AC 4. That application was denied, thus there was no new credit. AC 4–5.

Plaintiffs state that they "were seeking both options for modification and refinancing" and refinancing "could involve new monies." Opp'n 3. However, the gravamen of plaintiffs' allegations is that their loan was not modified. Thus, there was no new transaction to trigger TILA's disclosure requirements. Plaintiffs have not cited any case law to support the argument that defendant has an obligation to make TILA disclosures prior to a refinancing application being granted and prior to it being known whether the refinancing would constitute a "new transaction."

Even accepting plaintiffs' allegations as true, because plaintiffs have failed to plausibly allege that defendant's TILA disclosure obligations were triggered, they have failed to state a TILA claim. Accordingly, plaintiffs' TILA claim is dismissed.

### B. *Plaintiffs' TILA claim is time-barred.*

Defendant also argues that any TILA claim would be time-barred. Mot. 4–6. The Court agrees—even if plaintiffs had adequately pled a TILA claim, this claim would be time-barred by the one-year statute of limitations. *See Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 679 (S.D.N.Y. 2016) ("TILA contains a one-year statute of limitations on damages claims.") (citing 15 U.S.C. § 1640(e)). The statute of limitations begins to run "from the time of the occurrence" of the TILA violation. *Arroyo v. PHH Mortg. Corp.*, No. 13-cv-02335, 2014 WL 2048384, at *12 (E.D.N.Y. May 19, 2014).

Plaintiffs' allegations do not clarify when they allege their TILA claim accrued. Nevertheless, plaintiffs do not dispute that the statute of limitations for their TILA claim has expired. *See* Opp'n 2–3. Plaintiffs argue, however, that their TILA claim is subject to

6

equitable tolling because they have made allegations of defendant's concealment and fraud, and thus the claim should be allowed to proceed. Opp'n 2–3.

"[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli– Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003). "In a TILA . . . case, equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of [his or] her claims." *Futterman v. Wash. Mut. Bank, FA*, No. 10-cv-01002, 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010). This affirmative act must constitute "some trick or contrivance" that was "designed to mask the existence of the plaintiff[s'] cause of action." *Id.* (quoting *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F.Supp. 1284, 1291 (S.D.N.Y. 1988)). In addition to alleging that "some extraordinary circumstance" warrants tolling, such as "fraudulent concealment of the cause of action," a plaintiff seeking to qualify for equitable tolling must show that they "had been pursuing [their] rights diligently." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018).

Plaintiffs' complaint is not clear on the concealment and fraud that warrants equitable tolling for their TILA claim. Plaintiffs' opposition brief in this regard argues only that defendant "made fraudulent representations about [plaintiffs'] rights and then intentionally delayed responses to modification requests to time out their ability to seek relief." Opp'n 3. This argument is unavailing for two reasons.

First, plaintiffs' complaint does not connect these allegations of fraud to plaintiffs' inability to seek relief or become aware of any alleged TILA violation. Specifically, plaintiffs' conclusory allegations do not demonstrate how defendant's fraudulent

misrepresentations masked the existence of plaintiffs' TILA claim, such as preventing plaintiffs from learning of defendant's failure to disclose a statement of borrower's rights. Having failed to allege that defendant's fraud prevented plaintiffs from exercising their rights, plaintiffs have not demonstrated that they are entitled to equitable tolling on their TILA claim. *See Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir.2011) ("Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations.").

Second, even if plaintiffs had alleged fraud that prevented them from exercising their rights under TILA, plaintiffs have alleged no facts which would tend to show they acted with reasonable diligence during the period they seek to toll. *Cf. Sides v. Paolano*, 782 F. App'x 49, 50–51 (2d Cir. 2019) (finding plaintiff may have alleged that equitable tolling should apply where he was unable to access notary services during the eight days he sought to toll). Conclusory allegations of non-disclosure, unaccompanied by a showing that the plaintiff was diligent in pursuing their rights, will not entitle a plaintiff to equitable tolling of their claims. *See Latouche*, 752 F. App'x at 13–14. Here, plaintiffs offer no allegations that they acted with reasonable diligence to pursue their rights under TILA.

Thus, even if plaintiffs had stated a claim for relief, their TILA claim would be time-barred and dismissed.

## II.    RESPA

Pursuant to Section 2605 of RESPA, borrowers may submit requests to a loan servicer for information "relating to the servicing" of a loan. 12 U.S.C. § 2605(e)(1); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013). These requests are referred to as qualified written requests ("QWRs"). QWRs must include the borrower's name, account information, and "a statement of the reasons for the belief of

8

the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Upon receipt of a QWR, a loan servicer must acknowledge receipt in writing within 5 days, and within 30 days must either make corrections to the borrower's account or after investigation provide the borrower with other information as prescribed by the statute. *Id.* §§ 2506(e)(1)(B), 2506(e)(2). "To state a claim under RESPA, a plaintiff must [1] allege that the defendant failed to comply with specific RESPA provisions and [2] identify damages that [he or] she sustained as a result of the defendant's alleged RESPA violations." *Bocci v. Nationstar Mortg. LLC*, No. 23-cv-01780, 2024 WL 3813756, at *8 (S.D.N.Y. June 28, 2024), *report and recommendation adopted*, 2024 WL 4326932 (Sept. 27, 2024) (emphasis omitted).

Defendant argues that plaintiffs have failed to allege that they made a qualified written request that was improperly ignored, and have failed to allege damages flowing from defendant's alleged violation. Mot. 6–9. Because plaintiffs have failed to plead a RESPA violation or resulting damages, this claim is dismissed.

### A. Qualified Written Request

To allege a RESPA violation, a plaintiff must allege that he or she sent a letter that qualified as a QWR and the loan servicer did not appropriately or timely respond. *See Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, No. 08-cv-00019, 2010 WL 883683, at *3 (N.D.N.Y. Mar. 8, 2010), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) ("For Plaintiff to prevail on a RESPA violation . . . it is necessary that she . . . establish that she sent, and the Defendants received, a 'qualified written request' that would trigger the Defendants' obligation to acknowledge the request; Plaintiff must then be able to prove that Defendants failed to meet this obligation."). To establish that a plaintiff's communication

to a loan servicer constituted a QWR, a plaintiff "must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR . . . ." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (finding plaintiff's allegation that he submitted a QWR that "formally pointed to [the defendant's] error" and "disputed the validity of his current debts with defendant," without more, was too non-specific to qualify as a QWR).

Additionally, RESPA's requirements under 12 U.S.C. § 2605 are only triggered when a borrower sends a QWR requesting "information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). Loan servicing inquiries that trigger RESPA have been "consistently distinguished. . . from loan modification inquiries," and courts have "concluded that liability under § 2506(e)(1) does not inhere" to loan modification inquiries. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 266 (S.D.N.Y. 2017); *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-03291, 2014 WL 4742509, at *7 (E.D.N.Y. Sept. 23, 2014) ("[C]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan.").

Here, plaintiffs' allegations are not sufficient to plausibly allege that they sent a QWR to defendant. While plaintiffs allege that defendants failed to respond in a timely manner to plaintiffs' loan modification applications, *see* AC 4, 6, loan modification applications do not constitute QWRs that trigger an obligation to respond pursuant to RESPA. Plaintiffs acknowledge this deficiency in their opposition to defendant's motion, stating that "[w]hile this does not include requests for loan modification, Plaintiffs [sic] requests were both for loan modification and to respond to issues with Plaintiffs' forbearance status." Opp'n 3–4. However, these allegations are not contained in plaintiffs'

complaint, which states only that plaintiffs submitted an application for loan modification to which defendant did not respond. Factual allegations that are contained only in a plaintiff's opposition to a defendant's motion to dismiss generally cannot be considered by the Court when considering the legal sufficiency of a plaintiff's complaint. *See Paul v. Bailey*, No. 09-cv-05784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers.").

Nevertheless, even if the Court were to consider plaintiffs' allegation that they "made requests" to defendant regarding forbearance, this allegation is not sufficient to plausibly allege that those requests constituted QWRs. Opp'n 4. Specifically, plaintiffs fail to identify any specific written request, indeed, it is unclear how many "requests" plaintiffs sent. Further, plaintiffs do not allege whether these requests were made in writing, to whom they directed their requests, why the requests were sent (other than their general reference to forbearance), or the contents of the requests. *Kilgore*, 89 F. Supp. 3d at 538; *see also Miller v. HSBC Bank U.S.A., N.A.*, No. 13-cv-07500, 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015).

Plaintiffs' conclusory statements of requests sent to defendant do not plausibly allege their requests qualified as QWRs and thus fail to state a RESPA claim.

### B.  RESPA Damages

Even if plaintiffs had alleged that they sent a QWR to defendant, plaintiffs have failed to sufficiently allege damages. To plead a claim under RESPA, a plaintiff "must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with [RESPA] § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of [RESPA] § 2605."

*Kilgore*, 89 F. Supp. 3d at 539. To adequately allege actual damages, plaintiff "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605." *Manzolillo v. Nationstar Mortg., LLC*, No. 22-cv-03570, 2025 WL 411754, at *6 (E.D.N.Y. Feb. 6, 2025). "[C]onclusory allegations to that effect will not suffice." *Id.*; *see also Corazzini v. Litton Loan Servicing LLP*, 09-cv-00199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010*)* ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."). Plaintiffs may also recover statutory damages of no more than $2,000 "in the case of a pattern or practice of noncompliance" with Section 2605. *Dolan v. Select Portfolio Servicing*, No. 03-cv-03285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016); *see also* 12 U.S.C. § 2605(f)(1)(B).

i.  <u>Plaintiffs have not plausibly alleged actual damages.</u>

Plaintiffs allege that defendant's actions underlying this complaint have "caused significant financial damage to Plaintiffs" because "[i]nterest rates are significantly higher and Defendant now threatens their credit score." AC 5. However, plaintiffs do not claim that this harm flowed from defendant's failure to respond to plaintiffs' communications, rather than flowing from defendant's denial of plaintiffs' loan modification application. Plaintiffs' conclusory statement that they suffered damages, without showing that those damages flow from any alleged failure to respond to a QWR, is not sufficient to plausibly allege actual damages. *See Corazzini*, 2010 WL 6787231, at *12 ("Plaintiff's failure to establish that she suffered actual damages from the alleged RESPA violations is fatal to her claim."); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 08-cv-00019, 2009 WL 1748743, at *9 (N.D.N.Y. June 19, 2009), *aff'd*, 421 F. App'x 97 (2d Cir. 2011)

("A violation of Defendants' statutory duty alone does not state a RESPA claim . . . [w]ithout an allegation of actual pecuniary damages and proximate cause.").

Plaintiffs also argue, without citation, that courts in the Second Circuit "have recognized that actual damages can encompass emotional distress." Opp'n 4. This argument is curious, as plaintiffs' complaint does not allege that they have suffered emotional distress, thus, plaintiffs' statement that "actual damages can encompass emotional distress" is immaterial. Moreover, even if plaintiffs had alleged they suffered emotional distress, they have failed to allege facts that demonstrate a causal connection between defendant's alleged RESPA violations and any emotional distress. *See Ehrenfeld v. Wells Fargo, N.A.*, No. 19-cv-02314, 2019 WL 4933631, at *5 (E.D.N.Y. Oct. 7, 2019) (finding plaintiff failed to plead emotional distress damages because she failed to allege that defendant's RESPA violations caused her emotional distress); *see also Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 270 (D. Conn. 2017) ("Courts . . . have disallowed RESPA claims for emotional distress that are conclusory and unsupported and therefore fail as a matter of law.").

Accordingly, plaintiffs have failed to plausibly allege actual damages.

ii.  Plaintiffs have not plausibly alleged statutory damages

Plaintiffs argue that they have plausibly alleged entitlement to statutory damages because defendant "engaged in a pattern of non-compliance by having its agents make false statements to consumers." Opp'n 5. For purposes of section 2605, a "'pattern or practice' means a standard or routine way of operating." *Gorbaty*, 2012 WL 1372260, at *5. While there is "no set number of violations needed to plead a pattern or practice of noncompliance," courts generally hold that a plaintiff must allege more than two

violations of RESPA to support a claim for statutory damages. *Tanasi*, 257 F. Supp. 3d at 272.

    First, plaintiffs' conclusory statement regarding a "pattern of non-compliance," *see* Opp'n 5, is contained only in plaintiffs' opposition to defendant's motion to dismiss. Plaintiffs' complaint makes no allegation of a pattern or practice of impropriety on the part of defendant. *See generally* AC. As noted *supra*, factual allegations not contained in a plaintiff's complaint generally cannot be considered when evaluating the complaint's legal sufficiency. *See Paul*, 2013 WL 2896990, at *5.

    Even if the Court were to consider the conclusory statement, plaintiffs do not allege any facts which would indicate that defendant has a pattern or practice of failing to meet the requirements of RESPA. Plaintiffs have not, for example, alleged that defendant has been subject to complaints from other consumers, identified other lawsuits in which other plaintiffs allege defendant violated RESPA, or even identified more than one alleged violation of RESPA. *Cf. Tanasi*, 257 F. Supp. 3d at 272 (finding plaintiff alleged statutory damages by alleging that the CFPB had received 3,100 complaints against defendant); *Kapsis*, 923 F. Supp. 2d at 448–49 (plaintiff alleged statutory damages by identifying two of plaintiff's own letters which were not responded to by defendant, and listing purported RESPA violations by defendant in servicing each proposed class member's loan).

    Plaintiffs have not alleged any facts in their complaint that show a pattern or practice of committing RESPA violations, against the plaintiffs or any other consumers, such that the plaintiffs are entitled to statutory damages. *See Ehrenfeld*, 2019 WL 4933631, at *5.

*      *      *

As plaintiffs have failed to plead: (1) a QWR which defendant allegedly failed to respond to; (2) that defendant's failure to respond caused them actual damages; or (3) that defendants had a pattern or practice of RESPA noncompliance, their complaint fails to state a claim under RESPA. Accordingly, plaintiffs' RESPA claim is dismissed.

### III.    CARES Act

Defendant argues that the CARES Act does not provide a private right of action, and the Court should decline to imply one absent a showing of congressional intent to create one. Mot. 10. In response, plaintiffs argue the Court should imply a private right of action for violations of the CARES Act, because the Act was intended to protect consumers, like plaintiffs, and "there is sufficient intent by Congress to show that they intended borrowers to be able to enforce" their rights. Opp'n 6. In the first instance, plaintiffs have not plausibly alleged that defendant violated the CARES Act. Additionally, plaintiffs have failed to rebut the strong presumption against implying private rights of action in the absence of explicit congressional intent.

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act. Pub. L. No. 116-136, § 1102, 134 Stat. 281 (2020). The section of the Act codified at 15 U.S.C. § 9056 allowed borrowers with federally backed mortgage loans who were experiencing financial hardship due to the COVID-19 pandemic to request forbearance. *See* 15 U.S.C. § 9056(b)(1). Upon receipt, the servicer was required to provide forbearance for up to 180 days, which could be extended for an additional 180 days upon request by the borrower. *Id.* §§ 9056(c)(1). This section of the CARES Act also placed a moratorium on foreclosure actions for 60 days beginning on March 18, 2020, that was later extended by the United States Department of Housing and Urban Development through July 31, 2022. *Id.* § 9056(c)(2); *see also* U.S. Dep't of Hous. and

Urb. Dev., Mortgagee Letter 2020-4 (March 18, 2020); U.S. Dep't of Hous. and Urb. Dev., Mortgagee Letter 2021-15 (June 15, 2021).

The Supreme Court has stated that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In making this determination, the "interpretive inquiry begins with the text and structure of the statute[.]" *Id.* at 288 n.7. There is a strong presumption against finding a private right of action absent a clear manifestation of Congressional intent to create one. *See Bellikof v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). "Such a clear manifestation exists where the statute's text and structure show an intention to create a federal right through rights-creating language, an intention to create a private remedy, and consistency of a private remedy with the statutory scheme." *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 157 (S.D.N.Y. 2020) (citing *Rep. of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014)). Other factors to consider can include: (1) whether Congress has provided an alternative means of enforcing the relevant provision; (2) whether Congress created a cause of action in another section of the statute, thus suggesting that the failure to do so in the instant section was intentional; and (3) that the provision spoke of imposing obligations on regulated entities rather than on "rights-creating language." *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 104 (2d Cir. 2019).

The CARES Act does not contain an express cause of action for borrowers. Thus, the Court must "begin with the presumption that Congress did not intend one." *Bellikoff*, 481 F.3d at 116. Plaintiffs have failed to rebut this presumption. Plaintiffs' argument in support of a private right of action pursuant to the CARES Act is that while "[a]dmittedly," other courts have found that the CARES Act does not provide a private right of action, "[p]laintiffs would note that consumers like them were the people intended to be

16

protected by the forbearance rules" and "there is sufficient intent by Congress to show that they intended borrowers to be able to enforce said right." Opp'n 6. *See also Pena v. PHH Mortg. Corp.*, No. 20-cv-02830, 2022 WL 398399, at *3 (N.D. Tex. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 394759 (Feb. 9, 2022) ("[T]he CARES Act's foreclosure moratorium does not create a private right of action—every district court to consider this question has held as much.").

Plaintiffs have not offered any evidence of Congressional intent which would tend to show that Congress contemplated borrowers would be able to bring a private right of action under the section of the CARES Act which allowed consumers to enter mortgage forbearance. Plaintiffs have offered no other bases on which the Court could find an implied private right of action, such as pointing to rights-creating language in the relevant section of the statute. *See Oxford Univ. Bank*, 933 F.3d at 104.

Additionally, plaintiffs do not even specify which provision of Section 9056 they allege gives rise to a private right of action. Section 9056, under which plaintiff brings this action, provides several provisions regarding mortgage forbearance, including, among others: (1) that during a period of forbearance, no fees, penalties, or interest were to accrue beyond amounts scheduled or calculated as if the borrower made contractual payments on time and in full under the terms of the mortgage contract, *see* 15 U.S.C. § 9056(b)(3); (2) that a servicer must provide forbearance to a borrower upon receiving a request attesting that the borrower was experiencing a financial hardship caused by the COVID-19 emergency, *see id.* § 9056(c)(1); (3) that a period of forbearance must be up to 180 days, *id.*; (4) that a borrower may extend for up to 180 additional days upon request, *id.*; and (5) that a servicer of a federally backed mortgage loan may not initiate a foreclosure process, move for a foreclosure judgment or order of sale, or execute a

foreclosure eviction or sale for at least 60 days following March 18, 2020, *id*. § 9056(c)(2). Plaintiffs provide no indication of what provision gives rise to a private right of action here.

In this same vein, plaintiffs have failed to allege how defendant violated any of the above provisions. To the contrary, plaintiffs allege that they requested and were granted mortgage forbearance. AC 3. Section 9056 of the CARES Act required lenders to grant mortgage forbearances where a debtor submitted a request affirming that they were experiencing a hardship during the COVID-19 emergency. *See* 15 U.S.C. § 9056(b). Based on the scant allegations in plaintiffs' complaint, that appears to be what happened here. Nevertheless, plaintiffs allege defendant "intentionally [] fail[ed] to provide proper advice and affirmative misadvice to the [p]laintiffs as well as failing to forward their denial of modification/refinance in the time allotted" thus, assumedly, violating the CARES Act. AC 6–7. However, the section of the CARES Act under which plaintiffs bring this claim does not require a lender to provide "advice" to a debtor about entering forbearance or require lenders to communicate with debtors regarding applications for loan modifications or refinancing.

Plaintiffs have failed to overcome the strong presumption against finding an implied right of action or to state a claim for relief under the CARES Act. Accordingly, plaintiffs' CARES Act claim is dismissed.

## IV. Fraud

Lastly, defendant argues that plaintiffs' fraud claim must be dismissed because plaintiffs' allegations do not meet the heightened pleading requirement for fraud and are too speculative as to damages. Further, defendant argues plaintiffs' fraud claim is barred

by res judicata. Mot. 12–16. Defendant is correct as to each deficiency of this claim, and thus, plaintiffs' claim for fraud is dismissed.

### A. Res judicata

Defendant moves to dismiss plaintiffs' claim of common law fraud based on res judicata. Mot. 13–16. The doctrine of res judicata "means essentially that the matter in controversy has already been adjudicated." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015). There are two distinct forms of res judicata: claim preclusion and issue preclusion. *Id.* Here, defendant relies on claim preclusion, which "forecloses successive litigation of the very same claim." *Id.* at 107–08. Whereas issue preclusion prevents re-litigation of issues "actually decided" in a prior action, claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411–12 (2020). That is because a "party cannot avoid the preclusive effect of res judicata" simply by "asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017).

To prevail on claim preclusion, a party moving to dismiss must establish (1) a prior "final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021). The fourth prong extends to issues not raised, but that could have been raised, in the prior action. *Id.* Here, defendant has established each factor requiring plaintiffs be barred from bringing this claim again.

First, plaintiffs brought a claim for common law fraud against defendant in the state court action. *See* Mot. Ex. A.[4] Plaintiffs do not dispute that they brought this claim against defendant in state court. Accordingly, defendant has established that the same cause of action was brought before a court of competent jurisdiction in a case involving the same parties. The remaining element is thus whether the state court judgment constituted a final judgment on the merits giving it preclusive effect.

This Court looks to New York law to determine the preclusive effect that should be given to the state court judgment. *See Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Mach. Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) ("In assessing the preclusive effect of a prior state-court judgment, we apply the preclusion law of the state that issued the judgment."). Here, the state court dismissed plaintiffs' State Court Complaint after amendment pursuant to CPLR § 3211(a)(7), concluding that none of plaintiffs' claims, including for fraud, were cognizable "in these circumstances." Mot. Ex. B. In New York law, "[a]s a general rule, a dismissal for failure to state a cause of action is not on the merits, and thus, will not be given res judicata effect." *Pereira v. St. Joseph's Cemetery*, 78 A.D.3d 1141, 1142 (2010) (reversing dismissal of a complaint where plaintiff's prior complaint alleging the same cause of action was dismissed pursuant to CPLR § 3211(a)(7)).

---

[4]    When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P 12(b)(6), a district may take judicial notice of matters of public record, including documents filed in other court proceedings. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991). However, judicial notice may only be taken "to establish the fact of such litigation and related filings," not "for the truth of the matters asserted in the other litigation." *Id.* at 773–74.

However, where a new complaint "raises identical causes of action based on the same facts," a prior dismissal pursuant to CPLR § 3211(a)(7) has preclusive effect. *See Salvador v. Touro Coll. & Univ. Sys.*, 749 F. App'x 39, 43 (2d Cir. 2018). Thus, if the new complaint fails to cure the defects of the original, the dismissal pursuant to CPLR § 3211(a)(7) may be given preclusive effect. *Blake v. City of N.Y.*, 144 A.D.3d 1071, 1073 (2d Dep't 2016). Defendant argues that here, plaintiffs' previously dismissed claim of fraud is "almost identical" to the claim plaintiffs seek to bring in the instant action. Mot. 15. In response, plaintiffs argue that they have "corrected any defects under New York law," that this complaint is based on defendant's violations of federal law, and that they are "seeking more appropriate relief." Opp'n 7. Upon review of the factual allegations in both plaintiffs' State Court Complaint and the instant federal complaint, plaintiffs' allegations of fraud are virtually the same. In both complaints, plaintiffs allege that defendant's agents held themselves out as licensed mortgage brokers, either failed to warn plaintiffs of the risks of forbearance or told them there were no risks associated with forbearance, intended to deceive plaintiffs to profit off of them, and plaintiffs relied on the false statements which caused the principal of plaintiffs' loan to increase and the value of their property to decrease. *See* AC 7; Mot. Ex. A. ¶¶ 44–51. As noted by defendant, the only substantive difference is the relief plaintiffs seek. Specifically, plaintiffs' federal complaint requests that the Court order defendant to refinance or modify plaintiffs' loan through a streamline modification. AC 7.

Here, plaintiffs' state and federal complaints raise an identical cause of action for fraud based on the same factual allegations and the federal complaint does not cure the previous defects. Thus, the state court judgment has preclusive effect, even if plaintiffs now seek a different remedy in federal court. *See Parker v. Blauvelt Volunteer Fire Co.*,

93 N.Y.2d 343, 347–48 (1999) ("As a general rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."). Accordingly, plaintiffs' claim for fraud, contained in Count IV of their amended complaint, is barred by res judicata.

### B. *Heightened pleading requirement*

Even assuming that plaintiffs' fraud claim is not barred by the doctrine of res judicata, defendant also argues that plaintiffs' amended complaint fails to meet the heightened pleading requirement for fraud. Defendant argues that plaintiffs' complaint fails to specify the allegedly fraudulent statements, identify the alleged speaker, state where and when the allegedly fraudulent statements were made, or explain why the alleged statements were fraudulent. Mot. 13.

"A plaintiff claiming fraud must . . . comply with Rule 9(b)'s heightened pleading standard." *Von Horn v. Connors*, No. 22-cv-04721, 2024 WL 2578058, at *3 (E.D.N.Y. Mar. 28, 2024). Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud . . ." Fed. R. Civ. P. 9(b). To comply with this requirement, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

Here, plaintiffs make conclusory allegations that defendant's agents "falsely represented" and "portrayed" themselves as licensed mortgage brokers. AC 3, 7. However, plaintiffs provide no specificity regarding how the agents "represented" or "portrayed" themselves to be licensed mortgage brokers. Further, plaintiffs do not allege when and

where those representations were made, for example, whether they were made on defendant's website or through oral or written communication with plaintiffs. *See In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023), *cert. denied sub nom. Abelar v. Int'l Bus. Mach. Corp.*, 144 S. Ct. 827 (2024) (finding the district court properly denied leave to amend where plaintiff alleged fraud but failed to identify speakers of fraudulent statement, or when or where those statements were made).

Plaintiffs' allegation that defendant's agents "stated that there were no consequences or risks involved with forbearance," also lacks the requisite specificity to plausibly allege a fraud claim for the same reason. AC 7. Plaintiffs do not allege details as to when and where these statements were made, or why they were fraudulent. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 898–99 (E.D.N.Y. 2018), *adhered to on reconsideration*, No. 18-cv-00334, 2019 WL 1118052 (Mar. 11, 2019) (finding plaintiff's fraud allegation failed under Rule 9(b) because it lacked particularized facts indicating where and when allegedly fraudulent statements were made or viewed by the plaintiff and why they were fraudulent); *see also Bruno v. Zimmer, Inc.*, No. 15-cv-06129, 2017 WL 8793242, at *9 (E.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, 2018 WL 671234 (Feb. 1, 2018) (finding that plaintiff's complaint failed to satisfy Rule 9(b) where it did not indicate "the precise statements which Plaintiffs contend were fraudulent, the specific speakers involved in making such statements, where and when the statements were made and why the statements were fraudulent").

Additionally, even if plaintiffs pled the allegedly false statements with more specificity, plaintiffs' claimed damages are not sufficient to support their fraud claim. Plaintiffs request damages of "no less than $880,000 to be determined by an accounting of the damage caused by Plaintiff[s'] inability to refinance and/or modify their loan." AC

9. *See Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 29 (2010) (finding a "hypothetical lost bargain is too undeterminable and speculative to support cognizable damages" for fraud). This claim of damages to be determined in the future is too speculative to support plaintiff's fraud claim.

Plaintiffs' allegations therefore fail to plausibly allege fraud pursuant to the requirements of Rule 9(b) and plaintiffs' fraud claim is dismissed.

### V.    Declaratory Judgment

Plaintiffs bring a separate cause of action for "Declaratory Judgment." *See* AC 7–8. In opposition to defendant's motion to dismiss, plaintiffs concede that the Declaratory Judgment Act does not create an independent cause of action. Opp'n 7. It is "procedurally improper" to list an independent cause of action entitled Declaratory Judgment. *See Wyly v. CA, Inc.*, No. 05-cv-04430, 2009 WL 3128034, at *15 (E.D.N.Y. Sept. 29, 2009). Accordingly, Count V of plaintiffs' amended complaint is dismissed.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiffs' amended complaint is **GRANTED**. Plaintiff's complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

   */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge


Dated:    April 30, 2025
          Brooklyn, New York